J-A12028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSHUA PAUL WHITTAKER | |
| Appellant | No. 1763 EDA 2013 |

Appeal from the Judgment of Sentence entered June 5, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0000958-2012

BEFORE: SHOGAN, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED OCTOBER 29, 2014**

Joshua Paul Whittaker appeals from the judgment of sentence entered following his conviction of drug crimes and other offenses. Whittaker challenges the denial of his suppression and speedy-trial motions. He also challenges the trial court's application of a mandatory minimum sentence. Because police officers lacked exigent circumstances to perform a warrantless nighttime search of the curtilage of Whittaker's home, the trial court erred in denying his motion to suppress. We vacate and remand.

On October 5, 2011, at around 9:00 p.m., the Limerick Township, Montgomery County, Police Department received a report of a hit-and-run

_____

[*] Retired Senior Judge assigned to the Superior Court.

accident with property damage that occurred in nearby Royersford Borough.[1] The report described the vehicle as a black Subaru Outback with a roof rack that sustained damage to the driver's side. *See also* N.T. Suppression, 7/3/12, at 23. Responding to the call, after about 20 to 25 minutes, Officer Christopher Wienczek located a vehicle matching the description at 21 Springford Road, Limerick Township, one to one and one-half miles from the accident scene. No one was in or near the vehicle, which was parked in the driveway. Officer Wienczek did not find anyone in front of the house or behind it, and no one responded when he knocked on the front door, even though a light was on inside. After checking the vehicle's license plate, Officer Wienczek, who knew that Whittaker lived at 21 Springford Road based on a prior encounter, discovered that the Subaru was registered to someone who did not live there.

Sergeant Robert Matalavage arrived at the residence and, like Officer Wienczek, walked around the house to find anyone connected with the damaged Subaru. At a back window, Sergeant Matalavage shined his flashlight inside and noticed a toothpick-sized marijuana stem sitting on a

_____

[1] Unless otherwise noted, the facts are taken from the Trial Court Order sur: Motion to Suppress, 8/23/12, which contains findings of fact in support of the order denying Whittaker's motion to suppress. By way of explanation, a different judge presided at trial, and she incorporated by reference the suppression court's order into the Pa.R.A.P. 1925(a) opinion.

tray on a table. When he went to the back door, Sergeant Matalavage noticed much larger evidence of contraband: a two-foot tall marijuana plant in a pot sitting next to the door.

He knocked on the back door, and discovered that it was unlocked. Concerned that either the Subaru driver or the marijuana cultivator was inside, Sergeant Matalavage and two other officers conducted a one- to two-minute protective sweep of the interior, to search for persons who might destroy evidence or contraband. They found no one, and they saw no other contraband other than the marijuana sitting on the tray.

Police officers secured the perimeter while Sergeant Matalavage got a search warrant. Whittaker arrived home, but officers instructed him not to enter the residence. Whittaker ignored their instructions, ran into his house and barricaded himself inside a bathroom. Fearing that Whittaker was destroying evidence, Officer Wienczek and others went in after Whittaker. They broke down the bathroom door, forcibly removed Whittaker, and arrested him.

At 11:50 p.m., police executed a search of the residence using a nighttime search warrant obtained by Sergeant Matalavage. They recovered a large amount of marijuana from the toilet bowl of the bathroom where Whittaker was arrested. They also found packaging materials, a digital scale, glass smoking pipes, bongs, several books on how to grow marijuana, $4,000.00 in cash, a .22 caliber rifle, a .30-06 rifle, a Tech 9 mm handgun,

and a plastic baggie containing psychedelic mushrooms. **See also** N.T. Suppression, 7/3/12, at 31.

On October 6, 2011, police charged Whittaker with two counts of possession with intent to manufacture or deliver a controlled substance (PWID); two counts of possession of a controlled substance; and one count each of possession of drug paraphernalia, tampering with or fabricating physical evidence, obstructing the administration of law or other governmental function, and resisting arrest.[2] Whittaker moved to suppress the items seized from his house, and the trial court denied the motion. On March 13, 2013, Whittaker requested dismissal of the charges, alleging a violation of the Speedy Trial Rule, Pa.R.Crim.P. 600. The trial court also denied that motion by written opinion.

After a stipulated bench trial, the trial court convicted Whittaker on all counts. The trial court later sentenced Whittaker to mandatory flat five-year sentence of incarceration[3] followed by two years' probation. This appeal followed.

_____

[2] 35 P.S. § 780-113(a)(30), (16), and (32); and 18 Pa.C.S.A. §§ 4910(1), 5101, and 5104, respectively.

[3] **See** 42 Pa.C.S.A. § 9712.1, *declared unconstitutional by* **Commonwealth v. James Newman**, --- A.3d ---, 2014 PA Super 178, 2014 WL 4088805, 2014 Pa. Super. LEXIS 2871 (filed Aug. 20, 2014) (*en banc*). Section 9712.1 required a mandatory minimum five years in prison for offenders convicted of drug trafficking who also possessed a firearm. **Id.** § 9712.1(a). In **Commonwealth v. Ramos**, 83 A.3d 86, 94 (Pa. 2013), our Supreme Court held that § 9712.1 was an exception to the general rule
*(Footnote Continued Next Page)*

Whittaker raises three issues for our review, which we have reordered for ease of discussion:

I.    Did the trial court [err] in failing to dismiss all the criminal charges pursuant to Rule 600 of [the] Rules of Criminal Procedure when the Commonwealth failed to exercise due diligence in bringing the [D]efendant to trial within 365 days?

II.   Did the trial court err in failing to suppress physical evidence recovered from the residence when police searched the curtilage of the residence without a warrant and without probable cause and in circumstances where exigency was absent?

III.  Did the trial court err in sentencing the Defendant to a flat five years of imprisonment when the Commonwealth failed to give proper notice of the intention to seek the mandatory pursuant to 42 Pa.C.S.A. § 971[2].1(c)?

Appellant's Brief at 4.

We consider the Rule 600 issue first, because were we to find a violation, it would dispose of the appeal. The proper remedy for the Commonwealth's failure to try a defendant within 365 non-excludable days is dismissal of the complaint with prejudice. *See, e.g., Commonwealth v. Sloan*, 67 A.3d 1249, 1251 (Pa. Super. 2013) (discharging a defendant for a

*(Footnote Continued)* ───────────────

that a minimum sentence of incarceration cannot be more than half of the maximum sentence.

However, the mandatory sentence required by § 9712.1 can no longer be applied, because the procedure for implementing it is unconstitutional under *Alleyne v. United States*, 133 S. Ct. 2151 (2013). *James Newman*, 2014 WL 4088805, at *1, *13-14, 2014 Pa. Super. LEXIS 2871, at *1, *32-40.

Rule 600 violation). We cannot reach the merits of this issue. Whittaker neither filed the required motion nor ensured that the transcript of the Rule 600 hearing was part of the certified record on appeal. Therefore, he has failed to preserve his Rule 600 challenge for appellate review.

Rule 600 requires the **filing** of a written motion. Former Pa.R.Crim.P. 600(G); Current Pa.R.Crim.P. 600(D)(1).[4] A written motion in a criminal case is "filed" with the clerk of courts. Pa.R.Crim.P. 567(A)(1). "[L]eaving motions in the judge's chambers, or even handing a copy to the judge in the courtroom or elsewhere, does not constitute filing." **Commonwealth v. Lynch**, 450 A.2d 664, 666 (Pa. Super. 1982). Here, Whittaker merely handed a copy of his Rule 600 motion to the trial judge. Because it was never filed with the clerk of courts, it is not a part of the record. On appeal, this Court cannot consider matters outside of the record. **See Commonwealth v. Ross**, 57 A.3d 85, 96-97 (Pa. Super. 2012) (*en banc*) ("This Court does not rely on items dehors the record, such as assertions in an appellate brief or a trial court opinion.") (quoting **Commonwealth v.**

_____

[4] Rule 600 was rescinded and replaced effective July 1, 2013. Former Rule 600(G) required a defendant to "apply" for an order dismissing charges, which had been interpreted to require the filing of a written motion. **Commonwealth v. Brock**, 61 A.3d 1015, 1016, 1019 (Pa. 2013 (reaffirming **Commonwealth v. Drake**, 414 A.2d 1023 (Pa. 1980), and holding that "Rule 600 requires a defendant to file a written motion to dismiss"). Current Rule 600(D)(1) explicitly requires the filing of a written motion.

*Rush*, 959 A.2d 945, 949 (Pa. Super. 2008)). Whittaker therefore failed to preserve his Rule 600 claim.

Even if we excuse Whittaker's failure to file a written motion, the claim is waived for another reason. The transcript of the Rule 600 hearing is not part of the record. *See Commonwealth v. Little*, 879 A.2d 293, 300-01 (Pa. Super. 2005) (refusing to consider a claim because the relevant transcript was not part of the record). For Rule 600 issues, we review the evidence produced at the Rule 600 hearing and the trial court's findings for an abuse of discretion. *Commonwealth v. Lewis*, 804 A.2d 671, 673 (Pa. Super. 2002). Without the transcript, we cannot determine whether the trial court abused its discretion. Although the trial court made findings of fact, we cannot determine whether the record supports those findings. In sum, we cannot effectively review the denial of an unfiled motion and a hearing whose transcript is not a part of the record.

We next turn to Whittaker's challenge to the denial of his motion to suppress. He argues that police lacked probable cause and exigent circumstances to perform a warrantless search of the curtilage of his house.

In reviewing an order denying a motion to suppress, we must determine

> whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. In so doing, we may consider only the evidence of the

- 7 -

prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.[5]  Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Berkheimer*, 57 A.3d 171, 177 (Pa. Super. 2012) (*en banc*) (internal quotations and citations omitted).

"It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Id.* (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984)); *see also United States v. Jones*, 132 S. Ct. 945, 950-51 (2012) (noting that the Fourth Amendment protects property rights in, *inter alia*, a person's home, and concluding that the *Katz* test[6] did not "did not narrow the Fourth Amendment's scope").

The Fourth Amendment to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution require that searches be conducted pursuant to a warrant issued by a neutral and detached magistrate.  A warrantless search or seizure is *per se* unreasonable unless it falls within a specifically enumerated

---

[5] Our Supreme Court recently held that the appellate scope of review of an order granting or denying suppression is limited to the evidence produced at the suppression hearing—and not the record as a whole.  *In the Interest of L.J.*, 79 A.3d 1079 (Pa. 2013).  *L.J.* does not apply here.  The ruling is prospective, *id.* at 1088-89, and post-dates the trial court's decision in this case.  Therefore, if necessary, we may review the entire record.

[6] *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) (stating that the Fourth Amendment protects areas for which a person has an actual and reasonable expectation of privacy).

> exception. Exigent circumstances provide one such exception to the warrant requirement.

***Commonwealth v. Lee***, 972 A.2d 1, 3 (Pa. Super. 2009) (internal quotations and citations omitted). Thus, to perform a warrantless search of a home, police must have probable cause and an exception to the warrant requirement, for example, exigent circumstances. ***Id.*** at 3 (quoting ***Commonwealth v. Roland***, 637 A.2d 269, 270-71 (Pa. 1994)).

Furthermore, the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect not only the inside of a home, but also the curtilage surrounding it. ***Commonwealth v. Gibbs***, 981 A.2d 274, 279-80 (Pa. Super. 2009). Thus, for purposes of the Fourth Amendment and Article I, § 8, entering the curtilage is indistinguishable from physically entering the home. ***See, e.g., Commonwealth v. Cihylik***, 486 A.2d 987, 991 (Pa. Super. 1985) (noting that the word "houses" in the Fourth Amendment also includes the curtilage).

"The United States Supreme Court has defined 'curtilage' as 'the area to which extends the intimate activity associated with the 'sanctity of a man's home and privacies of life.'" ***Lee***, 972 A.2d at 3 n.2 (quoting ***Oliver v. United States***, 466 U.S. 170, 180 (1984)). In determining whether an area is within the curtilage, our courts "analyze factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." ***Commonwealth v. Simmen***, 58 A.3d 811, 815 (Pa. Super. 2012) (internal quotation omitted).

Initially, Officer Wienczek's entry onto Whittaker's property and knocking on the front door was not a search under the Fourth Amendment or Article I, § 8. The driveway and front of the house were outside of the curtilage because they were visible from the public street. An area next to a house that is exposed to public view and used by the public to access the house is not within the curtilage. **Commonwealth v. Simmen**, 58 A.3d 811, 815-16 (Pa. Super. 2012); **see also Gibbs**, 981 A.2d at 279-80 (holding that an unenclosed front porch abutting a public sidewalk was not within the curtilage).

Sergeant Matalavage's going **behind** the house, however, was clearly a search implicating constitutional protections against unreasonable searches and seizures.[7] The area next to the back door could not be viewed from the public street. Moreover, it was immediately adjacent to the backdoor, not the front door which the general public and, indeed, Officer Wienczek initially, use to access the house. Rather, accessing the area next to the backdoor required the police officer to go behind the house. **See** Trial Court Order sur: Motion to Suppress, 8/23/12, at 2-3. Indeed, the Commonwealth never argued that the backyard of Whittaker's house was not part of the curtilage, instead arguing that the search was justified by exigent

_____

[7] Officer Wienczek's going behind the house also was a search, though it is irrelevant, as he discovered no evidence.

- 10 -

circumstances.[8]  ***See*** N.T. Suppression, 7/3/12, at 50; ***see also Lee***, 972 A.2d at 3-4 & n.2 (area behind defendant's house was part of the curtilage). Therefore, we start with the premise that Sergeant Matalavage's search in the rear of the house triggered the Fourth Amendment and required probable cause and an exception to the warrant requirement.  ***Lee***, 972 A.2d at 3-4.

"A determination as to whether probable cause exists is based on the totality of circumstances.  Probable cause exists where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed."  ***Commonwealth v. Rushing***, 71 A.3d 939, 965 (Pa. Super. 2013), *rev'd in part on other grounds*, -- A.3d --- No. 3 MAP 2014 (Pa. filed Aug. 18, 2014).

> In determining whether exigent circumstances exist, a number of factors are to be considered[:]
>
>> (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, *i.e.*, whether it was made at night.  These factors are to be balanced against one

---

[8] If the back porch was outside of the curtilage, then police would have needed no suspicion to enter.

another in determining whether the warrantless intrusion was justified.

Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling. Nevertheless, police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.

*Roland*, 637 A.2d at 270-71 (internal citations and quotations omitted). Moreover, the Commonwealth must show by clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent. *Lee*, 972 A.2d at 4.

For example, in *Roland*, police charged the defendant with furnishing alcohol to minors and drug misdemeanors after they entered his home without a warrant to investigate a report of underage drinking. *Roland*, 637 A.2d at 270. Using the above factors, our Supreme Court determined that police lacked an exception to the warrant requirement that would allow them to breach the defendant's home. *Id.* at 271. The police were not in hot pursuit of a fleeing felon. *Id.* No danger to police existed justifying immediate entry, the people inside the house were unarmed, and the entry occurred at night, "a particularly suspect time for searches to be conducted[;]" and the offense being investigated was relatively minor. *Id.*

In addition, the Supreme Court disavowed this Court's ruling that exigency existed because evidence of the crime (beer cans) could have been destroyed and the minor partygoers could have fled while police obtained a warrant. *Id.* Our Supreme Court noted that beer cans are not easily

destroyed, police could have arrested any fleeing minor for possession of alcohol or public intoxication. *Id.* at 272. Insofar as some minors may have escaped, "[o]ne of the prices we have to pay for the security which the Fourth Amendment bestows upon us is the risk that an occasional guilty party will escape." *Id.* (quoting **Commonwealth v. Henderson Newman**, 240 A.2d 795, 798 (Pa. 1968)).

Sergeant Matalavage had probable cause to search behind the home. Limerick Township Police officers had received a report of a hit-and-run accident. They discovered a vehicle matching the exact description of the report in the driveway of Whittaker's home, and the vehicle had fresh damage of the type matching the report of the accident. Finally, no one answered the front door even though a light was on inside.

Because probable cause alone cannot suffice to search a home— including the curtilage—without a warrant, we must address whether exigent circumstances justified the search. Having reviewed the **Roland** factors, we conclude that the Commonwealth failed to prove by clear and convincing evidence that exigent circumstances existed. The case relied upon by the trial court and the Commonwealth, **Commonwealth v. Fickes**, 969 A.2d 1251 (Pa. Super. 2009), is plainly distinguishable. Rather, this case is comparable to **Lee**, relied upon by Whittaker, in which we held police lacked exigent circumstances to justify a warrantless entry into the curtilage of the defendant's house. In fact, there is even **less** of a showing of exigent circumstances here than in **Lee**.

In **Lee**, a woman called police at 11:30 p.m. after hearing a loud crash in her front yard and noticing that her mailbox was shattered into pieces and a large pine tree had been partially uprooted. **Lee**, 972 A.2d at 2. Within five or ten minutes, a police officer arrived on scene, and followed a trail of antifreeze to the defendant's house. **Id.** The officer followed the trail down the defendant's driveway, and saw the rear end of a pickup truck parked behind the house. **Id.** After going behind the house to investigate, the officer found that the truck had severe damage to the front end, and its airbags had deployed. **Id.** The officer had the defendant awoken, discovered evidence of DUI, and arrested him. **Id.**

We found that exigent circumstances did not support the warrantless search of the area behind the defendant's house. **Id.** at 4. The crime investigated was a nonviolent property crime, police had no reason to suspect that the suspect would escape or destroy evidence, and their entry onto the property was peaceable. **Id.** at 4.

We further held that the trial court erred in applying the "hot pursuit" exception to the warrant requirement:

> The trial court denied Lee's suppression motion on the theory of "hot pursuit", relying primarily on our decision in **Commonwealth v. Peters**, 915 A.2d 1213 (Pa.Super.2007), [*aff'd*, 965 A.2d 222 (Pa. 2009)]. In **Peters**, this Court determined that a police officer had the authority to make an arrest outside of his jurisdiction pursuant to section 8953(a)(2) of the Municipal Police Jurisdiction Act ("MPJA"), 42 Pa.C.S.A. § 8951 *et seq.* Section 8953(a)(2) permits a municipal police officer to go beyond the territorial limits of his primary jurisdiction if in "hot" or "fresh" pursuit of a person. In **Peters**,

we concluded that section 8953(a)(2) was applicable because the officer in that case "*chased* Appellant from one scene to the next" and "*continuously* pursued Appellant without *interruption* " until the appellant was apprehended in a neighboring municipality. **Id.** at 1219–20 (emphasis in original).

The trial court's reliance on **Peters** in this case was misplaced, as what constitutes "hot" or "fresh" pursuit under section 8953(a)(2) of the MPJA is not coextensive with "hot pursuit of a fleeing felon" for purposes of an analysis of the scope of individual constitutional rights under the Fourth Amendment and Article I, section 8. This Court has held that the MPJA is not to be strictly construed, but rather must be liberally interpreted to promote the interests of justice and public safety. In significant contrast, "hot pursuit of a fleeing felon" sufficient to create exigent circumstances for constitutional purposes requires a showing that "the need for prompt police action is imperative, either because the evidence sought to be preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger . . . ." [**Commonwealth v. Rispo**, 487 A.2d 937, 939 (Pa. Super. 1985)].

**Id.** at 4-5 (some internal citations omitted); **see also Stanton v. Sims**, 134 S. Ct. 3, 5 (2013) (*per curiam*) (noting a split of authority as to whether the Fourth Amendment prohibits police from entering a house (and its curtilage) to arrest a fleeing misdemeanant).

Here, like in **Lee**, police officers had probable cause of only a hit-and-run accident. They had no report of injuries to persons, and they had no evidence of DUI. The trial court characterized this case as similar to **Fickes** because both cases were police investigations of hit-and-run accidents. Trial Court Opinion, 8/23/12, at 6. **Fickes**, however, was **not** a mere hit and run, but rather, a DUI.

In *Fickes*, the arresting police officer **initially** responded to a hit and run, but **subsequently** developed probable cause of DUI. *Fickes*, 969 A.2d at 1253, 1258. During his investigation, the officer noticed that, based on muddy tire tracks, the fleeing vehicle had driven off the road and had run completely over a stop sign. *Id.* The officer followed the tire tracks to the defendant's garage, which was actually a "party headquarters" with alcohol containers everywhere with one couch pinned to the wall by the vehicle and a second couch leaning over the vehicle's hood. *Id.* at 1253-54. The officer saw the interior of the garage because the garage door was open. *Id.* He eventually walked into the garage and opened the driver's side front door, and found the defendant passed out drunk behind the wheel with a bottle of vodka next to him in the passenger seat. *Id.*

We distinguished *Lee* and found that the officer in *Fickes* had exigent circumstances justifying his warrantless entry into the garage. We noted that the investigation was of DUI—not a mere hit and run. *Fickes*, 969 A.2d at 1258 ("While Appellant seeks to characterize the police investigation as one involving only a hit and run, when we view the totality of the circumstances we conclude that [the arresting officer] possessed probable cause to believe that Appellant was [DUI]."). We based the finding of exigent circumstances on factors unique to DUI: the severity of the offense, and the transitory nature of the main evidence of DUI, blood alcohol content, which dissipates in the time needed to obtain a warrant. *Id.* at 1258.

Here, like *Lee* and unlike *Fickes*, police officers were investigating a hit and run. Though the driver of the Subaru hit several parked cars, no evidence of record exists—and the trial court did not find—that the driver left a "trail of destruction" on the roadway like the defendant in *Fickes*. *Cf. Fickes*, 969 A.2d at 1258 ("He left a trail of destruction that led the police to his doorsteps only to discover his vehicle ploughed into the makeshift social imbibing area into which he had converted his garage."). Moreover, there is no evidence of record that police suspected DUI. Therefore, the gravity of the offense in this case is identical to that of the offense investigated in *Lee*, a mere hit-and-run accident, *i.e.*, property damage. *See Lee*, 972 A.2d at 3 ("The gravity of the offense was low, as the police were investigating a report of property damage at the time of the intrusion."). In addition, police did not possess "above and beyond" a clear showing of probable cause. This is so, because although police knew that the driver of the damaged Subaru had left the scene of the accident, no one was able to identify that driver—only that he was probably in the area. Indeed, police probably lacked statutory authority to arrest the driver without a warrant.

The trial court stated that an immediate search of the premises was necessary to determine whether the driver of the damaged Subaru was hiding in the backyard. The record does not show the need for an immediate search, given that 20 to 25 minutes had passed since the report of the accident, the house was apparently unoccupied, and nothing connected the driver to Whittaker's house other than the Subaru parked in

his driveway. Officers were not in hot pursuit of a fleeing felon, because hot pursuit requires a "showing that 'the need for prompt police action is imperative, either because the evidence sought to be preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger[.]'" *Lee*, 972 A.2d at 5 (quoting *Rispo*, 487 A.2d at 939). Thus, this case is unlike *Fickes*, where there was a high likelihood that evidence of DUI could have been destroyed (*i.e.*, by the dissipation of alcohol in the defendant's blood) in the time it would have taken to procure a warrant. *Fickes*, 969 A.2d at 1259.

Additionally, in this case, police officers were not investigating a violent crime, and had no reason to believe that the suspected driver was armed and dangerous. There is no evidence that anyone in or around the house was aware of a police presence, and "thus there was no reason for the officers to think that destruction of evidence was imminent or that a suspect might escape if not apprehended quickly." *Lee*, 972 A.2d at 4.

The trial court found exigent circumstances in part because the Subaru driver could be hiding in the backyard. However, under the factors of *Roland*, *supra*, that fact alone is not an exigency. No danger existed that the suspect would destroy evidence, as there was no evidence of hit and run to destroy. Rather, if officers believed the suspect to be hiding in or around the house, they could have obtained a warrant to search for him or her. *Cf. Roland*, 637 A.2d at 272 (noting that the chance that some suspects would

flee while police obtained a warrant did not justify a nighttime warrantless entry into home).

We realize that police were concerned that the driver of the Subaru was possibly injured. As noted above, however, there was no evidence that anyone was injured. On cross-examination, Officer Wienczek conceded that there were no reported personal injuries, and there was no evidence at the scene of the hit and run that the driver was injured. N.T. Suppression, 7/3/12, at 14. Furthermore, there was no evidence at Whittaker's house that the Subaru driver was injured, because Officer Wienczek discovered no evidence of injury to the driver in or around the car when he inspected it. Therefore, this case is very similar to **Lee**, in which police responded to another hit and run where the fleeing vehicle struck a mailbox and a large pine tree. **See Lee**, 972 A.2d at 1.

No exigent circumstances existed in this case.[9] Police officers were investigating a nonviolent offense. They were not in hot pursuit of a fleeing

---

[9] For this reason, even though police officers had probable cause, they needed a warrant to search behind—*i.e.*, inside the curtilage of—Whittaker's house. Therefore, the plain view exception to the warrant requirement does not apply. Under the plain view exception, police must view the evidence from a lawful vantage point. **Commonwealth v. Joseph Newman**, 84 A.3d 1072, 1078 (Pa. Super. 2014) (noting that the plain view doctrine requires, *inter alia*, an officer to view the evidence from a lawful vantage point); **see also Horton v. California**, 496 U.S. 128, 136 (1990) ("It is . . . an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed."). Sergeant Matalavage possessed neither exigent circumstances nor a warrant; thus, he

*(Footnote Continued Next Page)*

suspect. There was no significant threat of destruction of evidence or of danger to police, bystanders, or suspects. In sum, the Commonwealth failed to show that exigent circumstances vitiated the need to obtain a warrant before police performed a warrantless nighttime search of the curtilage of Whittaker's house.

Finally, because the discovery of the marijuana stems and plant entailed a violation of the Fourth Amendment, all evidence subsequently should have been suppressed as the fruits of an illegal search. ***See, e.g., Commonwealth v. Johnson***, 86 A.3d 182, 187 (Pa. 2014) ("The established remedy for illegal seizures and searches, in criminal cases, is exclusion of the fruits of the illegal police conduct . . . .").

Given our disposition of this case, we need not address Whittaker's argument that the Commonwealth failed to give proper notice that it sought the mandatory minimum sentence, 42 Pa.C.S.A. § 9712.1, which, in any event, could not be applied, since this Court has now found the statute unconstitutional. ***See supra***, note 3.

For the foregoing reasons, we hold that police seized the evidence used against Whittaker in violation of his constitutional rights. Therefore, the trial court should have granted Whittaker's motion to suppress.

_____

*(Footnote Continued)* ⸻

was not lawfully inside the curtilage when he saw the marijuana stems and plant.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judge Shogan joins the Memorandum.

Judge Platt files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2014